Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
Jennette Wiser (JW0386)
jwiser@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391



*Attorneys for Plaintiffs Moose Toys Pty LTD;*
*Moose Creative Pty LTD; Moose Enterprise Pty LTD;*
*and Moose Creative Management Pty LTD*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| Moose Toys Pty LTD; Moose Creative Pty LTD; Moose Enterprise Pty LTD; and Moose Creative Management Pty LTD<br>*Plaintiffs*<br><br>v.<br><br>Three Bears, Inc. d/b/a Three Bears General Store<br>*Defendant* | **CIVIL ACTION No.** 3:16-cv-60<br>Mattice (Shirley) |

## COMPLAINT

Plaintiffs, Moose Toys Pty LTD ("Moose Toys"), a proprietary limited company organized and existing under the laws of Australia, Moose Creative Pty LTD ("Moose Creative"), a proprietary limited company organized and existing under the laws of Australia, Moose Enterprise Pty LTD ("Moose Enterprise"), a proprietary limited company organized and existing under the laws of Australia, and Moose Creative Management Pty LTD ("Moose

1

Management"), a proprietary limited company organized and existing under the laws of Australia (Moose Toys, Moose Creative, Moose Enterprise and Moose Management are hereinafter collectively referred to as "Plaintiffs" or "Moose"), by and through their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action for: copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; trademark infringement of federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; counterfeiting of federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims ("Action"). Plaintiffs seek injunctive relief, an accounting, compensatory damages and/or statutory damages, treble damages, attorney's fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.     This Court has Federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. and the Copyright Act, 17 U.S.C. §§ 101 et seq.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; as well as pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a).

2

3.     Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiffs in this district.

4.     Personal jurisdiction exists over Defendant because, upon information and belief, Defendant conducts business in Tennessee and in this judicial district, or otherwise avails itself of the privileges and protections of the laws of the State of Tennessee, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

## THE PARTIES

5.     Plaintiff Moose Toys is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia, and has a license to use the Marks (as defined below) and the Works (as defined below) in connection with the distribution and sale of the Moose Products and Shopkins Products (as defined below) in the United States.

6.     Plaintiff Moose Creative is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia and the owner of the Shopkins Mark (as defined below).

7.     Plaintiff Moose Enterprise is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia and the owner of the Moose Enterprise Mark and Moose Mark (as defined below).

8.     Plaintiff Moose Management is a proprietary limited company organized and

3

existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia and the owner of the Works (as defined below).

9.    Upon information and belief, Defendant Three Bears, Inc. d/b/a Three Bears General Store ("Three Bears" or "Defendant") is an active corporation organized and existing under the laws of the State of Tennessee, having its principal place of business at 2861 Parkway, Pigeon Forge, TN 37863 ("Parkway Address").

10.    Upon information and belief, Defendant has, at all relevant times herein, committed the unlawful acts set forth herein, including knowingly and willfully manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit and/or infringing Shopkins Products (defined below), or otherwise violating Plaintiffs' intellectual property rights in this judicial district.

## GENERAL ALLEGATIONS

### Moose and its Well-Known Shopkins Toys

11.    Moose is an Australian-based, family-owned business, founded in 1985 that designs, develops, markets and sells innovative children's lifestyle products and toys ("Moose Product(s)") under its well-known brands, including: Shopkins, The Trash Pack, Glitzi Globes, Little Live Pets, The Ugglys, Chocolate Bar Maker, Beados, and The Zelfs, among others ("Moose Brand(s)").

12.    Moose sells its Moose Products in over eighty (80) countries worldwide, through major retailers, quality toy stores, department stores and online marketplaces, including, but not limited to: Walmart, Toys R Us, Justice, Target, Kohls, Amazon.com and many others.

13.    One of the most popular Moose Brands is Shopkins, a line of over four hundred (400) miniature supermarket-themed, collectible character figurines ("Shopkins Product(s)").

4

Shopkins Products are categorized by their location in the supermarket, such as toiletries, fruits, vegetables, frozen foods, and bakery goods and are given cute and clever names like "Rockin Brock" for a head of broccoli, "Marsha Mellow" for a toasted marsh mellow, and "Freezy Peazy" for a bag of frozen peas. Shopkins Products are sold in 2 packs, 5 packs, and 12 packs. The Shopkins Product line also offers themed playsets such as Small Mart, Fruit & Vegetable and Bakery Stands, and Vending Machines. Part of the fun of collecting the Shopkins Products is the element of surprise, as each package comes with a surprise Shopkins Product concealed in a grocery basket or shopping bag. Currently, Moose has released four (4) Series (or Seasons) of Shopkins Products.

14.  Additionally, Moose and its authorized licensees sell Shopkins-related accessories and other licensed products, including, but not limited to: dolls, plush toys, backpacks, lunchboxes, board games, and candy, among others ("Licensed Shopkins Products"). Since its launch in 2014, Shopkins Products and Shopkins Licensed Products have been widely successful becoming the new must have children's toys.

15.  The popularity of the Shopkins Products has led Moose to expand into other business areas, including the development of Shopkins webisodes featuring the Shopkins characters, available on the Shopkins website, shopkinsworld.com, and YouTube that have garnered tens of millions of views. Additionally, Moose has entered into a deal with a major entertainment company for the production of a Shopkins cartoon series projected for release in 2016.

16.  Moose has received over forty (40) industry awards for its Moose Products and more specifically, for its Shopkins Products, including the prestigious Toy Industry Association of America's ("TTPM") 2015 Girl Toy of the Year Award for the Shopkins Smart Mart playset.

5

In addition, Moose has been honored with TTPM's Holiday 2014 Most Wanted List, Walmart's 2014 Chosen by Kids Top 20 Toy List and Toys R Us' 2014 Holiday Hot Toy List for one or more of its Moose Products.

17. Moose and its Shopkins Products have also received widespread press and media coverage. News stories, reports, reviews, features, press releases and blog posts have appeared in worldwide print and online publications, such as: The Herald Sun, Bloomberg, The Telegraph, CNN, CNBC, Business Insider, The Huffington Post, and Forbes, among many others.

18. Moose's success is also due to its use of the highest quality materials and processes in producing Shopkins Products.

19. In addition, Moose owes a substantial amount of the success of the Shopkins Products to its consumers, and word-of-mouth buzz that its consumers have generated.

20. While Moose has gained significant common law trademarks and other rights in Shopkins through its extensive use, advertising and promotion, Moose has also protected its valuable rights by filing for and obtaining federal trademark registrations.

21. Plaintiffs are the owners and/or licensees of U.S. Trademark Registration No. 4,528,193 for the wordmark "SHOPKINS" for a wide variety of goods in Classes 16 and 28 ("Shopkins Mark"), U.S. Trademark Registration No. 3,363,052 for the stylized Moose Enterprise logo,  for a wide variety of goods in Classes 22, 23, 28, 38 and 50 ("Moose Enterprise Mark"), and U.S. Trademark Application Serial No. 79167677 for the Moose Logo  in Classes 9, 16 & 28 ("Moose Mark") (hereinafter Shopkins Mark, Moose Enterprise Mark and Moose Mark are collectively referred to as the "Marks" or "Plaintiffs' Marks"). True and correct copies of the registrations and/or applications for the Marks are attached hereto as

6

**Exhibit A** and incorporated herein by reference.

22.    The Marks are currently in use in commerce in connection with the Shopkins Products. The constructive date of first use based on Moose's federal trademark registrations and/or applications for the Shopkins Mark is no later than October 29, 2012, for the Moose Enterprise Mark is no later than July 15, 2002, and for the Moose Mark is no later than November 19, 2015.

23.    Plaintiffs are the owners and/or licensees of both registered and unregistered copyrights in and related to the Moose Products and Shopkins Products.

24.    For example, Plaintiffs are the owners and/or licensees of U.S. Copyright Registration No. VA 1-974-244 covering the Shopkins Series 2 Collector's Guide and corresponding characters and U.S. Copyright Registration No. VA 1-974-287 covering the Shopkins Series 3 Collector's Guide and corresponding characters (hereinafter collectively referred to as the "Works" or "Plaintiffs' Works"). True and correct copies of the registrations for the Works are attached hereto as **Exhibit B** and incorporated herein by reference.

25.    As a result of Moose's efforts, the high quality of Moose Products and specifically, Shopkins Products, its marketing and promotional efforts, extensive press and media coverage and word-of-mouth buzz, Plaintiffs' Marks and Works, as well as Moose Products and Shopkins Products have become prominently placed in the minds of the public. Retailers, retail buyers, consumers, and the members of the public have become familiar with Plaintiffs' Marks and Works, as well as Moose Products and Shopkins Products and have come to associate them exclusively with Moose. Moose has acquired a valuable reputation and goodwill among the public as a result of such association (i.e., acquired distinctiveness or secondary meaning).

26.    Moose has gone to great lengths to protect its interests in and to its Marks and

7

Works. No one other than Moose and its authorized distributors and licensees are authorized to manufacture, import, export, advertise, distribute, offer for sale, or sell any Shopkins Products or Moose Products or other goods utilizing the Marks or Works, or any confusingly or substantially similar marks or artwork, without the express written permission of Moose.

## Three Bears' Wrongful and Infringing Conduct

27. Particularly in light of the success of Moose and its Shopkins Products, Moose and its Shopkins Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame Moose has amassed in its Marks, Works and Shopkins Products.

28. Plaintiffs investigate and enforce against such activity, and through such efforts, learned of Defendant's actions, which vary, and include one or more of the following: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit Shopkins Products to U.S. consumers at its retail store in Pigeon Forge, Tennessee, particularly Shopkins Series 2 ("Shopkins S2") 2 packs and 12 packs and Shopkins Series 3 ("Shopkins S3") 12 packs, in packaging bearing Plaintiffs' Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of Plaintiffs' Marks, containing Shopkins character figurines and Shopkins S2 and Shopkins S3 Collector's Guides that are identical or substantially similar to Plaintiffs' Works (hereinafter referred to as, "Infringing Products" or "Counterfeit Products").

29. On or about June 28, 2015, Moose received an e-mail from a consumer that her daughter had purchased an Infringing Product, specifically a Shopkins S2 12 pack, from Three Bears and provided a photo of the Shopkins character figurines contained in the Infringing Product. Plaintiffs have confirmed that the Shopkins character figurines pictured in the photo

8

from the consumer are not authentic. A true and correct copy of the photo of the Shopkins character figurines contained in the Infringing Product purchased by the consumer is attached hereto as **Exhibit C** and incorporated herein by reference.

30. On or about July 14, 2015, Moose instructed counsel for Plaintiffs to look into the matter. On or about August 4, 2015, counsel for Plaintiffs hired an investigative company, Visions Private Investigations ("Visions"), located in Knoxville, Tennessee, to further investigate Defendant's infringing activities.

31. Accordingly, on or about August 27, 2015, investigator Steven A. Williams ("Williams") from Premier Protection & Investigations, a licensed private investigation firm in Tennessee, subcontracted by Visions, visited the Parkway Address.

32. During his visit, Williams observed a display of Shopkins Micro Lites on the upper level of the Three Bears retail store and a display of Shopkins-related products on the lower level of the Three Bears retail store, including Shopkins S3 12 packs, Shopkins Plush Hangers and additional Shopkins Micro Lites. Williams proceeded to purchase one (1) Shopkins S3 12 pack, one (1) Shopkins Plush Hanger and one (1) Shopkins Micro Lite.

33. Plaintiffs have confirmed that the Shopkins S3 12 pack purchased by William from Three Bears is not authentic. True and correct copies of photographs of the Infringing Product purchased by William at Three Bears in comparison to true and correct copies of photographs of the authentic Shopkins Products are attached hereto as **Exhibit D** and incorporated herein by reference.

34. On or about September 15, 2015, counsel for Plaintiffs sent an initial warning letter to Three Bears. On or about September 18, 2015, counsel for Plaintiffs received a response from Three Bears alleging that the Infringing Products were purchased from an online vendor,

9

DHGate.com.

35. On or about October 2, 2015, Three Bears surrendered two hundred fifty (250) Shopkins S2 12 packs, one hundred (100) Shopkins S2 2 packs, and eighty-seven (87) Shopkins S3 12 packs to counsel for Plaintiffs.

36. Plaintiffs have confirmed that the Shopkins S2 12 packs, Shopkins S2 2 packs, and Shopkins S3 12 packs surrendered to counsel for Plaintiffs are not authentic. True and correct copies of photographs of the Infringing Products surrendered to counsel for Plaintiffs in comparison to true and correct copies of photographs of the authentic Shopkins Products are attached hereto as **Exhibit E** and incorporated herein by reference.

37. On or about October 26, 2015, Plaintiff sent a settlement agreement to Three Bears. Parties have been unable to come to an agreement on the terms of a settlement.

38. Defendant has infringed Plaintiffs' Marks and Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products that prominently display Plaintiffs' Marks and incorporate Plaintiff's Works.

39. Defendant is not, nor has it ever been, an authorized distributor or licensee of the Shopkins Products. Neither Plaintiffs nor any of Plaintiffs' authorized agents have consented to Defendant's use of Plaintiffs' Marks or Works, nor have they consented to Defendant's use of any identical or confusingly or substantially similar marks or artwork. Plaintiffs have never authorized Defendant to manufacture or import, any of its Shopkins Products or products bearing its Marks or incorporating its Works.

40. By the Defendant's dealings in Infringing Products (including, but not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying,

10

offering for sale, and/or selling Infringing Products) as alleged herein, Defendant has violated Plaintiffs' rights in and to its Marks and Works, and have used marks, images and/or designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiffs' Marks and Works, to confuse consumers and aid in the promotion and sales of their Infringing Products. Defendant's conduct and use began long after Plaintiffs' adoption and use of their Marks and Works.

41. Prior to and contemporaneous with their unlawful actions alleged herein, Defendant had knowledge of Plaintiffs' ownership and/or license of their Marks and Works and of the extraordinary fame and strength of Plaintiffs' Marks and Works and the incalculable goodwill associated therewith, and in bad faith purchased Infringing Products from DHGate.com, a known source of counterfeit products shipped from China. Defendant's infringing conduct is clearly willful given that they were also purchasing and selling authentic Shopkins Products. Further, Defendant's placement of the Infringing Products together with the authentic Shopkins Products causes a greater likelihood that consumers will be confused as to the source of the Infringing Products.

42. Defendant's illegal counterfeiting and infringing actions, alleged herein, will cause confusion, mistake and deceive consumers, the public, and the trade with respect to the source or origin of Defendant's Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by, or otherwise associated with Plaintiffs, thereby irreparably damaging Plaintiffs.

43. In committing these acts, Defendant has, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiffs: infringed Plaintiffs' Works; counterfeited Plaintiffs' Marks; infringed

11

Plaintiffs' Marks; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiffs' expense.

44. Unless enjoined, Defendant will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## (Federal Copyright Infringement)
## [17 U.S.C. § 501(a)]

45. Plaintiffs repeat and re-allege every allegation set forth in the preceding paragraphs.

46. Plaintiffs are the owners and/or licensees of the Works.

47. Defendant had actual notice of Plaintiffs' rights in and to the Works.

48. Defendant did not attempt and failed to obtain Plaintiffs' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiffs' Shopkins Products and/or Works.

49. Without permission, Defendant knowingly and intentionally reproduced, copied and displayed Plaintiffs' Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale and/or selling Infringing Products which bear such Works, or artwork that is at a minimum, substantially similar to Plaintiffs' Works.

50. Defendant's unlawful and willful actions as alleged herein, constitute infringement of Plaintiffs' Works, including Plaintiffs' rights to reproduce, distribute and/or sell such Works in violation of 17 U.S.C. § 501(a).

51. Defendant's knowing and intentional copyright infringement as alleged herein has caused substantial and irreparable harm to Plaintiffs and unless enjoined, Defendant will

12

continue to cause, substantial and irreparable harm to Plaintiffs for which they have no adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief, Plaintiffs' actual damages and Defendant's profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c))

52. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

53. Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Marks and with knowledge that their Counterfeit Products bear counterfeit marks, which are intentional reproductions, copies, and/or colorable imitations of Plaintiffs' Marks, or display spurious designations that are identical with, or substantially indistinguishable from Plaintiffs' Marks, Defendant has manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce.

54. Defendant has applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' Marks to packaging, point-of-purchase images and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Defendant's Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendant originate from, are associated with or are otherwise authorized by

13

Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

55. Defendants' unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized distributors or licensees and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiffs' Marks.

56. Defendant's actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

57. As a direct and proximate result of Defendant's actions alleged herein, Defendant has caused substantial and irreparable injury and damage to Plaintiffs and their valuable Marks for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause damage to Plaintiffs and their valuable Marks in an amount as yet unknown, but to be determined at trial.

58. Based on the foregoing, Plaintiffs are entitled to injunctive relief, damages that Plaintiffs have sustained and will sustain as a result of Defendant's unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION
## (Infringement of Registered Trademark)
## [115 U.S.C. § 1114/Lanham Act § 32(a)]

59. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

14

60. Plaintiffs have continuously used its Marks in interstate commerce since at least as early as June 2014.

61. Plaintiffs, as the owners and/or licensees of all right, title and interest in and to the Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

62. Defendant was at the time they engaged in their actions as alleged herein, actually aware that Plaintiffs are the owners and/or licensees of the federal trademark registrations for the Marks.

63. Defendant did not attempt and failed to obtain consent or authorization from Plaintiffs, as the registered trademark owner of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Shopkins Products and/or related products bearing Plaintiffs' Marks into the stream of interstate commerce.

64. Defendant knowingly and intentionally reproduced, copied, and colorably imitated Plaintiffs' Marks and applied such reproductions, copies, or colorable imitations to packaging and/or advertisements used in commerce, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendant's Infringing Products. Defendant manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing, or in connection with, such packaging and/or advertisements.

65. Defendant's egregious and intentional use of Plaintiffs' Marks in commerce and Defendant's sale of items bearing Plaintiffs' Marks or colorable imitations of Plaintiffs' Marks has caused actual confusion, and is likely to continue to cause further confusion, to cause

15

mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendant's Infringing Products are Plaintiffs' authentic Shopkins Products, or are otherwise associated with, or authorized by Plaintiffs.

66.   Defendant's actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

67.   Defendant's continued, knowing and intentional use of Plaintiffs' Marks without Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' federally registered Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

68.   As a direct and proximate result of Defendant's unlawful and infringing actions as alleged herein, Plaintiffs have suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the Marks and the goodwill associated therewith, for which they have no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause substantial and irreparable injury, loss and damage to Plaintiffs and their rights in and to the Marks and the goodwill associated therewith.

69.   Based on such conduct, Plaintiffs are entitled to injunctive relief, damages that Plaintiffs have sustained and will sustain as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

16

70. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

71. Plaintiffs, as the owners and/or licensees of all common law right, title, and interest in and to the Marks, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

72. Plaintiffs' Marks are inherently distinctive and/or have acquired distinctiveness.

73. Defendant knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to and constitute a reproduction of Plaintiffs' Works and/or used marks that are identical or confusingly similar to and constitute reproductions of Plaintiffs' Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendant's substandard Infringing Products are authentic Shopkins Products or related products, and/or that Defendant's Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, and/or that Defendant is affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendant to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiffs' Marks and Moose Brands, to Defendant's substantial profit in blatant disregard of Plaintiffs' rights.

74. By manufacturing, importing, exporting and/or assisting and encouraging third

17

parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' Shopkins Products using marks and artwork identical and/or confusingly or substantially similar to, or which constitute colorable imitations of Plaintiffs' Marks and Works, Defendant has traded off the extensive goodwill of Plaintiffs and their Shopkins Products to induce and did induce, and intends and will continue to induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

75. Defendant knew, or by the exercise of reasonable care, should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute a reproduction of Plaintiffs' Marks and Works would cause confusion, mistake, or deception among purchasers, users and the public.

76. Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, their Shopkins Products and their Marks and Works.

77. As a direct and proximate result of Defendant's aforementioned actions, Defendant has caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of its Shopkins Products and by depriving Plaintiffs of the value of its Marks and Works as

18

commercial assets, for which it has no adequate remedy at law, and unless immediately restrained, Defendant will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Plaintiffs' Marks and Works in an amount as yet unknown, but to be determined at trial.

78. Based on Defendant's wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Violation of Tennessee Deceptive Trade Practices)
### [Tennessee Consumer Protection Act, Tenn. Code. Ann. §§ 47-25-101, et seq.]

79. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

80. Without the authorization of Plaintiffs, Defendant has used Plaintiffs' Marks and Works and/or marks and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to Plaintiffs' Marks and Works in connection with the advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly or substantially similar to Plaintiffs' Shopkins Products.

81. Defendant, in the course of its business and actions alleged herein, has:

    a.     falsely passed off the Infringing Products as those of Plaintiffs;

    b.     caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Infringing Products with Plaintiffs and their

19

Shopkins Products;

        c.      caused likelihood of confusion or misunderstanding as to the affiliation, connection or association of the Infringing Products with Plaintiffs and its Shopkins Products;

        d.      represented that the Infringing Products have sponsorship, approval or characteristics, that they do not have; and

        e.      represented that the Infringing Products are of a particular standard, quality or grade, for which they are not.

82.    Defendant has willfully and intentionally engaged in the aforementioned unfair and deceptive trade acts or practices in violation of Tenn. Code Ann. § 47-18-104.

83.    As a result of Defendant's actions alleged herein, Plaintiffs have suffered, and will continue to suffer irreparable harm for which they have no adequate remedy at law.

84.    Pursuant to Tenn. Code Ann. § 47-18-109, Plaintiffs are entitled to enjoin Defendant's unlawful conduct, as well as recover Plaintiffs actual damages and Defendant's profits in an amount to be determined at trial, treble damages, reasonable attorneys' fees and costs and expenses..

## SEVENTH CAUSE OF ACTION
## (Unfair Competition)
## [Tennessee Common Law]

85.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

86.    By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendant has traded off the extensive goodwill of Plaintiffs and their

20

Shopkins Products to induce and did induce, and will continue to induce customers to purchase its Infringing Products, thereby directly competing with Plaintiffs. Such conduct has permitted, and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

87. Defendant's advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

88. Defendant knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

89. Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs and their competitive position while benefiting Defendant.

90. As a direct and proximate result of Defendant's aforementioned wrongful actions, Plaintiffs have been, and will continue to be, deprived of substantial sales of their Shopkins Products in an amount as yet unknown but to be determined at trial, and have been, and will

21

continue to be deprived of the value of their Marks as commercial assets, in an amount as yet unknown but to be determined at trial.

91. Plaintiffs have no adequate remedy at law for Defendant's continuing violation of its rights set forth above. Plaintiffs seek injunctive relief, an order granting Plaintiffs' damages and Defendant's profits stemming from their infringing activities, and exemplary or punitive damages for Defendant's intentional misconduct.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)
### [Tennessee Common Law]

92. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs.

93. By virtue of the egregious and illegal acts of Defendant as described herein, Defendant has been unjustly enriched in an amount to be proven at trial, violation of the common law of the State of Tennessee.

94. Defendant's retention of monies gained through its deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendant and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant, inclusive, and each of them, as follows:

A. For an award of Plaintiffs' actual damages and Defendant's profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of Plaintiffs' Works under 17 U.S.C. § 501(a);

B. For an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C.

22

§ 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

C.    In the alternative to Defendant's profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

D.    For an award of Defendant's profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of its federally registered Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

E.    For an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

F.    For an award of treble damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to Tenn. Code Ann. § 47-18-109;

G.    For award of damages to be proven at trial for common law unfair competition;

23

H.    For an award of damages in an amount to be proven at trial for unjust enrichment;

I.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendant, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendant, and all those in active concert or participation with Defendant, and each of them who receives notice directly or otherwise of such injunction from:

> i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;
>
> ii. directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks or Works;
>
> iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Works to identify any goods or services not authorized by Plaintiffs;
>
> iv. using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiffs' Marks and Works on or in connection with Defendant's manufacturing, importing, exporting,

24

advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products.

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendant with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendant and Defendant's commercial activities by Plaintiffs.

vi. engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiffs;

viii. engaging in any other act in derogation of Plaintiffs' rights;

ix. secreting, destroying, altering, removing, or otherwise dealing with the Infringing Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling

25

and/or otherwise dealing in the Infringing Products;

    x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

    xi. instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

J.    For an order of the Court requiring that Defendant recall from any distributors and retailers and deliver up to Plaintiffs for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation Plaintiffs' Marks or Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Works;

K.    For an order of the Court requiring that Defendant deliver up for destruction to Plaintiffs any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendant that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation Plaintiffs' Marks or Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Works pursuant to 15 U.S.C. § 1118.

L.    For an order from the Court requiring that Defendant provide complete

26

accountings for any and all monies, profits, gains and advantages derived by Defendant from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

M.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendant's possession which rightfully belong to Plaintiffs;

N.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.     For Plaintiffs' reasonable attorney's fees;

P.     For all costs of suit; and

For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.

Dated: February 3, 2016

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____
Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
Jennette Wiser (JW0386)
jwiser@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165

27

Telephone:   (212) 292-5390
Facsimile:   (212) 292-5391

*Attorneys for Plaintiffs*
*Moose Toys Pty LTD;*
*Moose Creative Pty LTD;*
*Moose Enterprise Pty LTD; and Moose*
*Creative Management Pty LTD*